## M. ELIZABETH BRADLEY

### *vs.*

## LOUISVILLE FOOD PRODUCTS COMPANY.

*Negotiable Instrument Act—Accommodation Indorsers—*
*Character of Liability—Separate Suits.*

Since Code, art. 13, sec. 82 (Negotiable Instruments Act),
provides that a person placing his signature upon an instru-
ment otherwise than as maker, drawer, or acceptor is deemed
to be an indorser, unless he clearly indicates his intention to
be bound in some other capacity, an accommodation indorser
is not to be regarded as a joint maker and primarily liable as
such, or as executing the instrument, and is consequently not
within Code, art. 50, sec. 2, prohibiting more than one suit on
a joint and several bond or promissory note when the parties
executing the same are alive and reside in the same county.

p. 388

Code, art. 13, sec. 82, providing that one placing his name
on a negotiable instrument otherwise than as maker, drawer
or acceptor is deemed to be an indorser unless he clearly indi-
cates a contrary intention, converts the liability of one who
places his or her name on the back of negotiable paper from
primary to secondary, making it not joint but several.

p. 389

*Decided June 29th, 1921.*

Appeal from the Superior Court of Baltimore City (AM-
BLER, J.).

Action by the Louisville Food Products Company against
M. Elizabeth Bradley. From a judgment for plaintiff, de-
fendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and
OFFUTT, JJ.

*L. B. Keene Claggett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*William C. Coleman,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This appeal presents a single question of law. The facts are apparently all agreed upon by the parties. The legal question does not seem to have been directly passed on heretofore in this State, but is one which may arise at any time and may be of considerable importance.

. The suit is between Mrs. M. Elizabeth Bradley and the Louisville Food Products Company upon certain promissory notes and a trade acceptance. These were made under the following circumstances:

On April 3rd, 1919, the Southern Cotton Oil Trading Company made a contract with George & Company, Incorporated, of Baltimore, for the sale to George & Company of 2,400 barrels of cotton seed oil; and about a month later George & Company sold 2,000 barrels of the oil to Marden, Orth & Hastings Corporation of New York.

The trade acceptance reads as follows:

"No. 1026.                                $9,088.73.

"Nov. 20th, 1919.

"Thirty days after date pay to the order of ourselves eight thousand eighty-eight and 73/100 dollars.

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

"Louisville Food Products Co.,

"Incorporated,

"J. T. Caldwell, Treasurer.

"To George & Co.,

"Baltimore, Md.

"No. 4852.

"Due Dec. 22, 1919."

The promissory notes were drawn by George & Company for $2,500 each, payable to the order of Marden, Orth & Hastings Corporation, at the rate of one note a month. All of these papers, both notes and acceptance, were before delivery endorsed by "J. T. Caldwell, treasurer, J. Elwood Bradley, Moncure N. Lyon, M. Elizabeth Bradley, B. F. Harvey, C. Blanche Harvey." There is no question but what these endorsements were placed on the notes and the acceptance prior to delivery to the Louisville Food Products Company, or that they were not paid in accordance with the face of the papers.

On June 7th, 1920, suit was brought against J. Elwood Bradley and, on March 1st, 1921, an absolute judgment was entered in favor of the plaintiff for $16,344.76. On June 15th, 1920, suit was brought upon the papers above referred to against the present appellant, M. Elizabeth Bradley, and the notes and trade acceptance upon which Mrs. Bradley was sued were a portion of the cause of action in the suit against J. Elwood Bradley. J. Elwood Bradley was president of George & Company, and Mrs. M. Elizabeth Bradley was his wife, and the other persons, whose names appear upon the back of the several papers, were officers of George & Company, except Mrs. Bradley and Mrs. C. Blanche Harvey, who was the wife of Mr. B. F. Harvey.

These facts having been established, the counsel for the appellant moved for a judgment of *non pros.* in the present case, basing the motion upon section 2 of article 50 of the Code, which reads as follows:

"No person shall institute more than one suit on a joint and several bond, promissory note, penal or single bill when the persons executing the same are alive and reside in the same county; and if more suits than one be instituted on any such bond, promissory note, penal or single bill, judgments of *non pros.* shall be entered against the plaintiff in such suits."

This motion was overruled and a judgment rendered by the Superior Court of Baltimore City against Mrs. Bradley, and it is from that action of the Court that the present appeal was taken.

The section of the Code above quoted has formed a part of the law of this State since 1825, and the act which placed it among the statutes declared that the purpose of the act was to "prevent the unnecessary accumulation of costs in civil suits." This act has stood practically unamended, except for the insertion in the original act of the words "promissory note," since the time of its passage. The question thus presented is, how shall the act be construed in view of the passage of the uniform negotiable instrument statute in 1898? Is the present case one which comes within the purview of section 2 of article 50 or is it not? The first point which suggests itself is, do or do not the words "executing the same" apply in the case of an accommodation endorser, which Mrs. Bradley in this case unquestionably was. As applied to negotiable paper, one who assumes a primary liability on the paper is undoubtedly one who executes the paper. Before the passage of the negotiable instrument statute, the rule in this State had been to regard one who had endorsed the note for the accommodation of the maker prior to its issue as a joint maker, and therefore, as a party primarily liable upon it to a subsequent *bona fide* holder for value, and many cases in this State might be cited which lay down this rule. The adoption of the negotiable instrument statute brought about a change in the relative liability of the parties to negotiable paper. It had previously been held in a long line of cases in this State that the liability of a party who endorsed such paper before delivery was that of a joint maker, that is, a primary liability. Section 82 of the act provided as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

The liability of the person placing his or her name on the back of a negotiable paper is thus converted from primary to secondary, *i. e.,* the liability is no longer joint but several. *Keyser* v. *Warfield,* 103 Md. 161.

An accommodation party is defined in section 48 of article 13, and that section declares that the accommodating party is liable on the instrument to a holder for value notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.   If we turn to section 87 we shall find the following condition to exist:

> "As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise.   Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."

Under these conditions, for this Court to hold that there was error on the part of the judge of the Superior Court would be in effect to say that this Court repealed as to endorsers the act of the Legislature of 1898.   That this Court has no right or power to do, and it follows that no error was committed by the judge of the superior court in overruling the motion for *non pros.*   It follows from the considerations stated that section 2 of article 50 is not applicable in a case like the present.   *Lightner* v. *Roach,* 126 Md. 474.

Some question was made at the argument as to whether the question sought to be brought before the court could be raised by a motion for *non pros.,* or whether it ought not to have been in the form of a demurrer or a plea in abatement.   In the view which this Court takes of the case, it is not necessary to pass upon this question, and, therefore, no opinion is now expressed upon that point.

*Judment affirmed, with costs.*