EMMETT M. LANIER, JR. *v.* BANK OF
VIRGINIA - POTOMAC

[No. 1188, September Term, 1977.]

*Decided June 12, 1978.*

The cause was argued before THOMPSON, LISS and
MacDANIEL, JJ.

*Arthur B. Brisker* for appellant.

*George F. Paxton* for appellee.

LISS, J., delivered the opinion of the Court.

This appeal is from a judgment in the amount of sixteen
thousand four hundred fifteen dollars and forty-seven cents
($16,415.47), entered on October 21, 1977, in favor of the Bank

of Virginia - Potomac (appellee) and against Emmett M. Lanier, Jr. (appellant). The facts behind the entry of judgment may be briefly recounted.

On August 2, 1973, the Bank of Virginia - Potomac lent the sum of fifteen thousand dollars ($15,000.00) to Yum Yum, Inc., a corporation of which appellant was president. On this date, appellant executed a promissory note in favor of the Bank in the face amount of sixteen thousand eight hundred thirty-seven dollars and forty-four cents ($16,837.44). On the front of the note, immediately under the word "Signatures", are printed the words: "Yum Yum Boutiques, Inc." Immediately below these words is the printed word "by -" followed by appellant's signature: Emmett Lanier. Below appellant's signature appears the half-printed, half-script word: "President." To the right of this signature under the word "Addresses" appears the address of the corporation.

On the reverse side of the note, atop the first of two lines appears the signature of appellant: "Emmett Lanier, Jr." followed by the script abbreviation: "pres." Below appellant's signature appears his address. In his affidavit in opposition to appellee's motion for summary judgment, appellant swore that the Bank placed his home address on the note below his signature, subsequent to his having signed the note and left the Bank's premises. The Bank does not, by affidavit, controvert this statement.

Payments on the note having fallen into default, appellee, on October 7, 1974, filed suit against the corporation and appellant individually. A motion for summary judgment and affidavit in support thereof were also filed on October 7, 1974. On January 23, 1975, appellant filed an opposition to appellee's motion for summary judgment and an affidavit in support thereof. The affidavit recites, in pertinent part:

> "2. That the defendant, Emmett M. Lanier, Jr., signed the note which is the subject of the above captioned matter in a Corporate capacity only, and that said note was in the name of Yum Yum Boutiques, Inc., and not in the name of Emmett M. Lanier, Jr.

"3. That none of the proceeds of the Yum Yum Boutiques, Inc. note were received personally by Emmett M. Lanier, Jr.

"4. That subsequent to the Corporate note being executed in the name of Yum Yum Boutiques, Inc., the plaintiff made a new loan to Sugars, Inc., a Maryland Corporation which in effect paid off the loan of the Yum Yum Boutique, Inc. Corporation to the plaintiff, and by so doing, the plaintiffs relinquished any possible rights which it may have had against the defendant, Emmett M. Lanier, Jr., arising out of the Yum Yum Boutiques, Inc. note.

"5. That at the time of the signing of the Corporate note in question, the plaintiff gave to Emmett M. Lanier, Jr. a copy of said note, with his signature on the reverse side as President. That the bank then apparently altered the note subsequent to his leaving the bank and placed his home address and other writings on the note which were alterations which were not authorized by the defendant, Emmett M. Lanier, Jr."

On September 19, 1975, the Circuit Court for Montgomery County (Shure, J.) filed an order denying appellee's motion for summary judgment, but finding as a matter of law:

"That there have been no material alterations in the note which is the subject matter of this suit; that the endorsement on the rear of said note in the name of Emmett M. Lanier, Pres. is a personal endorsement upon which Mr. Lanier is personally liable; that the only issue still remaining to be decided by the trier of fact is whether or not the note in question was paid off by the execution of a new loan to a corporation not a party to this action. . . ."

A jury trial on the merits of appellee's declaration was held on October 21, 1977. At trial, the court (Fairbanks, J.) limited the issues in accordance with Judge Shure's earlier ruling. The jury returned a verdict in favor of appellee, and appellant

noted a timely appeal to this Court from the judgment entered on that verdict. On appeal, appellant presents two questions for our consideration:

"I. Was the order signed by the Honorable Ralph G. Shure on the 19th day of September, 1975, an Order granting partial Summary Judgment on the issue of liability or was said order a denial of the Motion for Summary Judgment, requiring the entire case to be presented to the trier of fact?

"II. If the order of the Honorable Ralph G. Shure was an order granting Summary Judgment on the issue of liability in favor of the Bank of Virginia - Potomac against Emmett M. Lanier, Jr., personally, was said order rendered in error in view of the fact that questions of fact had been raised in the pleadings and in the Affidavit in Opposition for Summary Judgment, which required the entire case to be tried by the trier of fact?"

We will consider each of these questions in the order presented.

I.

Appellant first contends that the order signed by Judge Shure (filed September 19, 1975, and quoted in part above) was not an order granting partial summary judgment in favor of appellee, but rather was an order denying appellee's motion for summary judgment, and thus that he should not have been limited at trial to the single issue of whether the note in question was paid off by the execution of a new loan. While we agree with appellant that the order certainly did not, either in whole or in part, grant summary judgment in favor of appellee, we think the order was proper as one limiting the issues pursuant to Md. Rule 610 d.4.

Md. Rule 610 d.4. provides that:

"If on the motion judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, a party shall not be limited at the trial

to the facts stated in his affidavit. But in such case, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in the controversy, and direct such further proceedings in the action as justice may require. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

In the instant case, based on the undisputed facts contained in appellant's and appellee's affidavits, Judge Shure ruled as a matter of law that there were no material alterations in the note and that the endorsement on the note in the name of Emmett M. Lanier, pres. was a personal one.[1] Md. Rule 610 d.4. certainly vested Judge Shure with the authority to make such a ruling, and Judge Fairbanks was therefore correct in conducting trial in accordance with Judge Shure's ruling. Having determined that Md. Rule 610 d.4. vests the court with authority to pass an order limiting the issues at trial, we turn next to the question of whether the issues were properly limited in this case.

## II.

As we have heretofore decided that Judge Shure had the authority under the Maryland Rules to make the rulings which he did make, the sole remaining question to be decided by this appeal is whether his conclusions that as a matter of

---

1. This is so, notwithstanding the fact that Judge Shure indicated to Judge Fairbanks that he "intended to grant partial summary judgment to the plaintiff on two of the three issues." (i.e., whether there was a material alteration of the note and whether appellant's signature on the reverse side of the note constituted a personal endorsement). The order itself, as well as the docket entry based on the order, both indicate that appellee's motion for summary judgment was denied.

law there were no material alterations in the note and that the endorsement of the note in the name of "Emmett Lanier, Jr., pres." was a personal endorsement were correct. At argument, counsel for appellant conceded that the subsequent addition of the appellant's home address under the endorsement was not a material alteration within the meaning of the Uniform Commercial Code.

We conclude that Judge Shure was correct in his decision that as a matter of law the endorsement on this note was a personal one. We believe that Maryland Code (1975, 1977 Cum. Supp.) Commercial Law Art., Sections 3-402 and 3-403 are controlling. Section 3-402 provides, "Unless the instrument clearly indicates that a signature is made in some other capacity it is an endorsement." The official comment to this section of the Code provides:

"[t]he revised language is intended to say that any ambiguity as to the capacity in which a signature is made must be resolved by a rule of law that it is an endorsement. Parol evidence is not admissible to show any other capacity, except for the purpose of reformation of the instrument as it may be permitted under the rules of that particular jurisdiction. The question is to be determined from the face of the instrument alone, and unless the instrument itself makes it clear that he has signed in some other capacity, the signer must be treated as an indorser."

Section 3-403 (2) provides in pertinent part:

"(2) An authorized representative who signs his own name to an instrument.

. . .

"(b) Except as otherwise established between the immediate parties, is personally obligated ... if the instrument does not name the person represented but does show that the representative did sign in a representative capacity."

The official comment to this section suggests that parol evidence may be admitted in litigation between the immediate parties to provide that the signature by an agent was made in his representative capacity, but the section specifically states that liability is personal "except as otherwise established between the immediate parties."

The case law in Maryland is in accord with the language of the U.C.C. Prior to its adoption, the Court of Appeals held in *Belmont Dairy Co. v. Thrasher,* 124 Md. 320, 92 A. 766 (1914), that where an officer of a corporation endorses his name to a promissory note with the addition of his official title but without the name of the corporation or a designation of whom he is acting in a representative capacity for, he is prima facie personally liable. In order to overcome this presumption it was held that the endorser was required to prove that when the note was issued there was an understanding between the parties that he was signing his name merely to complete the signature of the corporation or other party whom he represented. The Court stated that "where an agent makes a promissory note to a third person in terms sufficient to bind himself as principal, the mere addition of the word agent or other description of his office or capacity to his signature does not change or vary the legal effect of the promise itself." *Id.* at 325. *See also: Lesser v. Todd Cigarette Service Co., Inc.,* 267 Md. 524, 298 A. 2d 151 (1973). In *Knipp v. Bagby,* 126 Md. 461, 95 A. 60 (1915), a trustee who executed a mortgage by adding the designation "trustee" after his signature was held to be personally liable.

Appellant relies principally on the case of *Emala v. Walter G. Coale, Inc.,* 244 Md. 159, 223 A. 2d 177 (1966), but the facts make it inapposite to the case sub judice. In *Emala,* the testimony indicated that Coale began selling farm implements to Emala's corporation, known as Emala Associates. Several years later, Coale sought additional security and persuaded Emala to endorse the notes securing payment in an individual capacity. Subsequently, Emala began to endorse the notes with his name followed by the designation "pres." Coale attempted to persuade Emala that he eliminate the designation "pres." after his signature and that he continue

to sign the note individually. Emala made it clear to Coale that he would not comply with his request and specifically advised Coale that he was adding the designation "pres." to his name because he did not intend to be liable personally for the debt. Coale accepted the note endorsed with "pres." on those conditions. When the corporation defaulted Coale attempted to hold Emala personally liable, and the Court held that given the conduct and the conversations between the parties it was apparent that there was a specific agreement that Emala was not to be responsible personally on his endorsement.

When we compare the facts in this case with *Emala* it is obvious that a different result must be reached. Appellant made the bald allegation in his opposition to plaintiff's motion for summary judgment that he had "signed this note in a corporate capacity only," and reiterated in his supporting affidavit that he had "signed the note which is the subject matter of the above-captioned matter in a corporate capacity only . . . ." There is nothing in the affidavit which even remotely suggests that there was an agreement between the appellant and the Bank that he was endorsing the note in a representative capacity and was not to be held personally responsible for his endorsement. As a matter of fact, unless he was intended to be personally responsible, the endorsement itself would have been an exercise in futility since the appellant had already signed as the chief executive officer of the corporation in its capacity as maker of the note. Under the circumstances, the supporting affidavit to appellant's opposition to the motion for summary judgment raised no genuine factual dispute between the parties.

In light of the provisions of Sections 3-402 and 3-403 of the U.C.C., these bald assertions are not sufficient to raise a genuine dispute as to any material fact and Judge Shure was correct in his determination that as a matter of law the endorsement by the appellant was a personal one. Judge Shure was careful to reserve for determination by the jury the issue on which there was a genuine dispute as to fact, *i.e.,* the issue of extinguishment of Yum Yum's and appellant's liability by reason of the execution of the new note by Sugars,

Inc. Appellant and Yum Yum were not successful in this contention and judgments were entered against the appellant and Yum Yum. We find no error.

*Judgment affirmed; costs to be paid by appellant.*